**SPOKANE, PORTLAND AND SEATTLE RAILWAY CO., a Washington Corporation et al., Plaintiffs,**

v.

**ORDER OF RAILWAY CONDUCTORS AND BRAKEMEN, a voluntary unincorporated association, etc., Defendants.**

Civ. A. No. 2528-66.

United States District Court
District of Columbia.

April 4, 1967.

Francis M. Shea, Ralph J. Moore, Jr., and David Booth Beers, Washington, D. C., for plaintiffs.

James D. Hill, Washington, D. C., for defendants.

OPINION

HOLTZOFF, District Judge.

This action was originally filed in the United States District Court for the District of Oregon by the Spokane, Portland and Seattle Railway Company and two affiliated corporations, which operate a railroad line between Seattle, Washington and Portland, Oregon. The suit was brought against the Order of Railway Conductors and Brakemen and certain officials of that organization. It sought an injunction against a strike of conductors and trainmen. A preliminary injunction was granted by the Court in Oregon. The defendants filed a counterclaim, praying for an injunction, that would, in effect, require the carrier to maintain the *status quo* as to the size and composition of its train crews and prevent any reduction of their size.

Subsequently, the defendant union denied any intention to call a strike, appar-

ently in light of the ruling of this Court in the *Akron* case, Akron & Barberton Belt Railroad Co. v. Brotherhood of Railroad Trainmen, D.C., 250 F.Supp. 691. In view of this development, the plaintiffs voluntarily dismissed their complaint and consented to a vacation of the preliminary injunction. The counterclaim remained for further adjudication.

This action was then transferred by the United States District Court for the District of Oregon to this Court. At this time the defendants move for a preliminary injunction enjoining the carriers from reducing the size of train crews.

This dispute had its inception in the so-called full crew laws that had been in existence in Washington and Oregon since the second decade of this century. These statutes required train crews on freight trains to be of a size that is somewhat larger than those maintained in States in which there are no such requirements. The Supreme Court held that State full crew laws were not superseded by the Arbitration Award of Board 282, which pursuant to a special Act of Congress, conducted a nation-wide arbitration of the size of crews, Brotherhood of Locomotive Engineers v. Chicago, Rock Island & Pacific Railroad Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501.

The Arbitration Award provided a procedure, which need not be summarized in detail, for reducing the size of train crews. The full crew laws, as construed by the Supreme Court, prevented these plaintiffs from taking advantage of Award 282 in that respect. By the time the full crew laws were repealed, as they have been, the two-year effective period of the Award had expired and therefore the railroads were foreclosed from taking any action thereunder.

In contemplation of taking steps to secure a repeal of the full crew laws, the plaintiffs entered into an agreement with the defendant union concerning the size of train crews. The pertinent provision of the agreement is contained in Paragraph IV(A) and reads as follows:

"Although there are no schedule rules, agreements, interpretations, or practices requiring a stipulated number of trainmen in any class of road service other than passenger, it is agreed that to the extent protected employees entitled to the service are available, assignments now operated with a conductor and two brakemen will continue to be operated with a conductor and two brakemen and assignments now operated with a conductor and three brakemen will continue to be operated with a conductor and three brakemen."

There is a difference of opinion as to the meaning of this provision. The carriers contend that under this agreement, as long as a position is provided for every protected employee, the size of train crews may be reduced below one conductor and two brakemen or one conductor and three brakemen, and that these minimum sizes need be maintained only if protected employees are available to fill the positions. On the other hand, it is argued by the Union that these minimum sizes of crews must be maintained at all hazards and that the provision reading, "to the extent protected employees entitled to the service are available" is intended to mean solely that a reduction to the minimum sizes shall be secured or attained gradually by attrition. The carriers submitted to the National Railroad Adjustment Board the question as to what is the proper interpretation and construction of this agreement. This proceeding is still pending before that Board.

The National Railroad Adjustment Board is granted jurisdiction of disputes between an employee or a group of employees and a carrier or carriers, growing out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, 45 U.S.C. § 153, subsection (i). Under the statute a decision of the Board on a question properly submitted to it is binding on all parties, subject, perhaps, to a very limited court review. In other words, there is established a form of compulsory arbitration. It seems to the Court that while a proceeding is pending before that

Board, there should be no change in the *status quo* and that the size of crews must be maintained until the Board rules.

 There is an additional consideration. The Union served a so-called Section 6 notice under the Railway Labor Act, 45 U.S.C. § 156, proposing that thereafter the size of train crews shall be not less than one conductor and two trainmen. Resort to self-help is prohibited under the Railway Labor Act, as it has been construed, while proceedings under a Section 6 notice are pending and before all the administrative remedies provided by that statute are exhausted. This Court had occasion to discuss the procedure under this Act in considerable detail in Atlantic Coastline Railway Co. v. Brotherhood of Railroad Trainmen, D.C., 262 F.Supp. 177, and that summary need not be reiterated here.

As this Court had occasion to say in the *Akron* case, to which reference has been made, after serving a notice under Section 6 the carrier may not change rates of pay, rules, or working conditions, including the size of train crews. On the other hand, the employees may not call a strike or use other coercive measures in order to enforce their demands. The obligations are reciprocal on the part of the carriers and the unions.

 It is argued that by serving a Section 6 notice one side cannot prevent the other from taking any step. The Court is of the opinion, however, that if a railroad desires to reduce the size of crews, as it has been doing in this instance, an orderly manner to achieve its desire is to serve a Section 6 notice of its own. In any event, the pendency of the proceeding before the National Railroad Adjustment Board, which is considering the dispute as to the meaning and interpretation of the existing agreement, requires the *status quo* to be maintained until the Board acts.

In view of these considerations the Court will grant the motion of the defendant Union for a preliminary injunction restraining the carriers from reducing the size of train crews below one conductor and two brakemen. The Court is fixing the minimum size during the interim period at a conductor and two brakemen in view of the fact that is what the Section 6 notice served by the Union calls for.

A transcript of this oral decision will constitute the findings of fact and conclusions of law.

Counsel may submit a proposed order in accordance with this decision.